N. M. HART, Appellant, v. M. O. DELPHEY et al., Appellees.

WILLIAM S. HART, Appellant, v. M. O. DELPHEY et al., Appellees.

**COSTS: Taxation—Loss of Right to Retax.** The right to retax costs 1 may be wholly lost by long, unexplained delay.

**COSTS: On Appeal—Construction of Order.** An order on appeal, to 2 the effect that "the costs will be equally divided," without any direct mention of the costs in the trial court, will be construed as applying to the costs on appeal only.

*Appeal from Allamakee District Court.*—W. J. SPRINGER, Judge.

OCTOBER 17, 1922.

TRIAL court overruled motion made by plaintiffs to correct decree and retax costs in the district court, after remand from the Supreme Court. Facts appear in the opinion. Plaintiffs appeal.—*Affirmed.*

*William S. Hart,* for appellants.

*H. H. Griffiths* and *D. J. Murphy,* for appellees.

ARTHUR, J.—The genesis of the question presented, of retaxation of costs, is as follows: In February, 1904, N. M. Hart began a suit in equity in the Allamakee district court against M. O. Delphey *et al.,* claiming ownership in fee simple of Lots 5 and 7, Section 26, Township 97, Range 3, Allamakee County, Iowa; that said

1. COSTS: taxation: loss of right to retax.

lands were islands, situated on the flood plain of the Mississippi River; that the value of said lands consisted entirely of the growing timber thereon, the destruction or removal of which would leave the land of little value; that defendant M. O. Delphey wrongfully entered upon said land, and took possession thereof under some pretended claim of ownership, and wantonly destroyed and removed a large amount of valuable timber therefrom; that other defendants, acting under Delphey, had gone upon and removed valuable timber from said land, and used it for other purposes; that each of the defendants was insolvent; and that they were about to remove more timber. The petition prayed that defendants be enjoined from entering upon the premises and using them in any way, and for an accounting for the waste. A temporary injunction was issued, as prayed.

Defendants, answering, denied every allegation of plaintiff's petition, except that M. O. Delphey was in possession of the property, and claimed same under the homestead laws. Defendants other than M. O. Delphey answered, disclaiming any interest in the property.

In a separate answer, M. O. Delphey alleged that, on March 31, 1903, he made homestead entry of the land, and, pursuant to such entry, took possession and improved the land by erecting buildings and fences, and cultivating the land and clearing the land, and that the land never had been owned by any private individual except himself; that, if the land had ever been taxed, sold for taxes, or deeded for taxes, each and all of such things were void, and gave no property right to anyone; and that plaintiff never had any right to the land in any way. He asked for dissolution of the temporary injunction, and for general equitable relief.

By an amendment to her petition, N. M. Hart made Minnie L. Delphey, wife of M. O. Delphey, a party defendant. Minnie L. Delphey answered, admitting that, as wife of M. O. Delphey, she entered on said premises with him, under homestead entry referred to in the answer of M. O. Delphey.

In a separate answer, Minnie L. Delphey alleged that she was the absolute owner in fee of Lots 5, 6, and 7 in Section 26; that she owned and occupied said premises as a homestead; and

that she purchased said lands from Allamakee County, and received a deed therefor. She prayed that the title to said lands be quieted in her.

In November, 1908, William S. Hart began an action against M. O. Delphey, Minnie L. Delphey, Allamakee County, James Ruth, county auditor, and J. H. Leppert, county treasurer, alleging purchase of Lot 6 at tax sale, and praying a decree establishing such sales as regular, and his title as absolute, and that tax deeds be issued to him, and his title quieted against the Delpheys.

The Delpheys answered, denying that Lot 6 was ever subject to taxation, but alleging that the same was swamp land, and the title in Allamakee County; that the county never parted with its title until said Lot 6 was purchased from the county by Minnie L. Delphey, on September 11, 1907, when she received a deed from the county; that they were occupying the land under the deed from the county; that Minnie L. Delphey was the absolute owner thereof under said deed from Allamakee County; and that William S. Hart had no interest therein.

After the issues were made up in the two cases, and before or at the beginning of the trial, the cases were consolidated, for the purpose of trial, and, by written stipulation of the parties, it was agreed that the case of N. M. Hart v. M. O. Delphey *et al.* (No. 6959) and the case of William S. Hart v. M. O. Delphey *et al.* (No. 7911) should be tried at the same time and on the same record; that the depositions and evidence filed and that offered at the trial should be considered, so far as applicable in each case; that the court should try both cases at once, and decide them on said record. On the 1st day of April, 1910, the two cases came on for trial. The evidence offered by plaintiffs consisted of the deposition of William S. Hart, of considerable length, wherein the witness testified that he had sole charge of the property involved, so far as it had been in the control of the plaintiff, N. M. Hart, and of the interests of N. M. Hart, and of all the litigation and contests with reference to the property upon N. M. Hart's behalf, since tax deed was obtained from the county treasurer to N. M. Hart in December, 1897. He described the timber and vegetation growing upon the premises

and the character of the land, and testified of the Delpheys' trying to homestead the land, and of contest before the local land officers; of a decision rendered in favor of the Delpheys in June, 1905, by the government land officers at Des Moines, from which N. M. Hart appealed to the commissioner of the general land office. The deposition also stated that, on October 16, 1905, the commissioner reversed the local government land officer and canceled the homestead entry of the Delpheys, and that an appeal was taken by Delphey to the secretary of the interior, who, on January 19, 1907, sustained the commissioner and canceled Delphey's entry.

The hearings before the government land officers, the commissioner, and the secretary of the interior were quite lengthy, and involved considerable expense, and the testimony and record evidence were voluminous. Defendants read in evidence the depositions of M. O. Delphey and Minnie L. Delphey, wherein they testified to homestead entry made by M. O. Delphey of Lots 5, 6, and 7, and his occupancy and residence on the land with his family, and of the injunction proceeding in the N. M. Hart case. Numerous exhibits containing proceedings before and correspondence with the local land officers and the general land office, a stipulation of facts as to certain matters, and a transcript of proceedings in the homestead contest and of the county records, and many other items, were introduced in evidence, making a voluminous record.

On April 4, 1910, the court entered decree for plaintiff, in the case of N. M. Hart v. M. O. Delphey et al., quieting title in her to Lots 5 and 7, and awarding damages against M. O. Delphey and Minnie L. Delphey in the amount of $300, and for costs. On the same day, a decree was entered in the case of William S. Hart v. M. O. Delphey et al., in favor of plaintiff, quieting title in him to Lot 6. On the 29th day of September, 1910, the Delpheys perfected their appeal to this court in each of said cases. By agreement of the parties, the two cases had been consolidated, for the purpose of trial and decision in the district court and on appeal. The cases were submitted to this court, and on June 8, 1912, decision was handed down in the cases of "N. M. Hart, Appellee, v. M. O. Delphey et al., Appellants," and "W. S. Hart, Appellee, v. M. O. Delphey et al.,

*Appellants,''* in an opinion appearing in 157 Iowa 316. In stating the claims of the parties to the lands in controversy, we said:

"Mrs. [N. M.]Hart claims to be the owner of Lots 5 and 7, and Mr. [Wm. S.] Hart of Lot 6, and the basis for each claim is a tax deed or deeds for said lots, executed as hereinafter set forth. Defendants Delphey claim to own the same by purchase from the county, and by reason of having homesteaded the same under circumstances hereinafter to be related. Each also claims that the other is estopped from making any claim to the lands. One of the claims of all parties is that the lands were 'swamp' in character; that they passed from the United States government to the state, from the state to Allamakee County, and from Allamakee County to certain purchasers; and the records disclose that Mrs. Delphey has the paper title from the United States government, passing through the channels above indicated. The main reliance of the plaintiffs is upon tax deeds issued to them at various times, which defendants say were and are invalid, because the lands were not subject to taxation at the times the taxes were levied against them. While defendants are relying upon a homestead entry which we shall presently consider, they, or at least one of them, is relying upon a patent from the United States government, issued to the state under the theory that the lands were not subject to homestead entry, but were swamp lands, which passed to the state and county, and afterward to Mrs. Delphey."

We further said:

"It is very clear, we think, that the Delpheys took nothing under the homestead entry; but Mrs. Delphey holds the paper title from the county under the quitclaim deed to her, after the issuance of the patents. She is not herself estopped from challenging plaintiff's title because of the contest over the homestead entry, nor by reason of any other act on her part."

Again, we said:

"As the county sold Lot 6 and received the money therefor, which it still retains, and as it treated the lot as sold, by regularly listing and assessing the same, we think it is estopped from saying that the lands had not, in fact, been sold, and were not subject to taxation. As Mrs. Delphey holds under a quitclaim deed from the county, she acquired no greater rights than

the county, and is also estopped from asserting title to Lot 6 under her quitclaim deed from the county. * * * As to Lots 5 and 7, the county did nothing which estopped it from claiming title under the patents from the general government and from the state. * * * It must be remembered, in this connection, that neither of the plaintiffs is claiming title from the county by reason of any sales made by it of its swamp lands. Their titles are based upon tax sales, and a purchaser at tax sales gets nothing through his purchase, if the lands were not subject to taxation.''

Finally, in the opinion, we said:

"In the first case, a judgment and decree was given for N. M. Hart, quieting title to Lots 5 and 7, and rendering judgment for plaintiff in the sum of $300: This seems to be erroneous, and it must be, and it is, reversed. In the second case brought by W. S. Hart, there was simply a decree for the plaintiff, without any judgment except for costs. This decree seems to be correct, and it is affirmed. The costs will be equally divided between appellants and appellees. First case is reversed and remanded. Second case affirmed.''

After the decision, N. M. Hart and William S. Hart presented a motion to this court to retax costs, contending that the order of this court that "the costs will be equally divided between appellants and appellees" was an unfair apportionment of the costs, and that one eighth of the printing costs was all that should be taxed against them, and that the other seven eighths should be taxed against the Delpheys. The Delpheys filed a showing in the way of a counter motion, agreeing with the Harts that the order to divide costs equally was inequitable, and asked that three fourths or more of the costs be taxed to the Harts, and one fourth or less to them, and also urged that the costs in the district court should be taxed in the same proportion. Said motions were overruled. The Delpheys also moved that decree be entered in this court in said causes, so consolidated, in accordance with the opinion providing for judgment for costs, as taxed by the clerk in the district court in the N. M. Hart case against her, and in the William S. Hart case against him. The Harts resisted the motion for decree in this court, on the ground that the entry of such decree in this court

was not provided for in the opinion, and that the case was expressly remanded to the district court, and urged that:

"By mutual agreement of the parties, all depositions taken for use in both cases were filed in the first case [the N. M. Hart case], and the costs taxed therein, and a judgment against appellees [the Harts] for costs in that case would, in fact, be a judgment against appellees for all of the costs in the entire litigation; whereas the expense of taking the depositions and fees of witnesses should be equally apportioned in both cases, and it is peculiarly the province of the district court to investigate that question and make a proper apportion of the costs."

The motion for decree in this court was overruled.

On April 6, 1914, the Delpheys filed in the district court a motion for decree, and presented a form of decree in the N. M. Hart case, quieting title in Minnie L. Delphey to Lots 5 and 7, and decreeing judgment for costs against N. M. Hart; and a form of decree in the W. S. Hart case, establishing and quieting title in W. S. Hart to Lot 6, and granting a judgment for costs against the Delpheys. The motion for decree lay dormant until 1920, when it was urged in the N. M. Hart case by the Delpheys, and on September 7, 1920, a decree was entered in the N. M. Hart case in accordance with the opinion in *Hart v. Delphey*, 157 Iowa 316, as to reversal of the case, establishing and quieting title in the Delpheys to Lots 5 and 7; and therein judgment was entered against N. M. Hart for the costs taxed by the clerk of the district court in such case.

On October 13, 1920, a motion was filed by the Harts to correct the decree entered on September 7, 1920, and for retaxation of costs. The motion, with the resistance thereto of the Delpheys, was heard, and on April 8, 1921, was overruled, the court refusing to modify the judgment for costs entered in the N. M. Hart case on September 7, 1920. From such order refusing retaxation of costs, this appeal is prosecuted.

As remarked in the opinion in *Hart v. Delphey*, supra, and as now may be stated with more emphasis, "Such is the unusual and complicated record in this case." The order of the district court, by agreement of parties, for consolidation of the two cases for trial in the district court, and the trial had under such consolidation, undoubtedly called for apportionment of the total

costs incurred in the two cases, or the consolidated cases, as
nearly as may be, in accordance with the use and application of
the evidence to the issues. It was the duty of the clerk of the dis-
trict court to tax the costs. Code Section 3862. The clerk did tax
the costs, placing in the N. M. Hart case certain items for which
judgment was entered on April 4, 1910, in the amount of
$163.85; and in the W. S. Hart case, certain items were taxed
by the clerk, for which judgment was rendered. From inspec-
tion of the fee book, a copy of which is before us, it appears
likely, but not clear, that at some time,—we do not know when,—
the clerk attempted (but did not complete his work) to appor-
tion the costs of the evidence in the consolidated cases, which
was almost entirely in form of depositions in the two cases. This
is suggested by a fee in favor of Agnes Cooper, commissioner,
of $11.50 taxed in one case, and $11.50 in the other; and also
by the item, ''Fees taxed in No. 6959 [the N. M. Hart case]
$48.55,'' appearing on the fee book in the William S. Hart case,
$48.55 being approximately one half of the cost of the evidence
in the consolidated cases. Another item appearing on the fee
book in the N. M. Hart case, ''Fees in No. 7911 [the W. S. Hart
case], $29.20,'' is confusing. Possibly it may be interpreted
as indicating the amount of costs taxed in the W. S. Hart case
before, and less the items of ''Continuances, $1.65,'' and trial
and ''Decree, $2.25,'' making $3.90 already taxed; because the
footing, $33.10, minus $29.20, is $3.90. But the record before
us does not, with any degree of accuracy, disclose the meaning
of the above mentioned items. The item of $48.55 was not de-
ducted when, on April 4, 1910, judgment for costs in the amount
of $163.85 was entered in the N. M. Hart case, nor was the item
of $29.20 taken into account. The trial court, in entering judg-
ment in 1910, with the depositions, records, and files before him,
had an opportunity which is not afforded after the lapse of more
than ten years, to order the costs to be apportioned and correctly
taxed. When the judgments for costs were entered in the cases
in 1910, either party might then have applied to have the costs
retaxed. Code Section 3864. Neither party made such applica-
tion. Failure to do so may be accounted for by the fact that
N. M. Hart was successful in her case, and W. S. Hart was suc-
cessful in his case in the court below, and William S. Hart,

being counsel for N. M. Hart, his wife, and himself, was then not particularly concerned about where the costs were taxed; and the Delpheys, being defeated in both cases, were not particular where the costs were taxed. But this situation, we think, does not excuse the more than ten-year delay in moving in the trial court for retaxation of costs.

Again, in 1912, when the cases were decided in this court, and the N. M. Hart case reversed and remanded, it became certain that decree in the district court in favor of the Delpheys

2. COSTS: on appeal: construction of order.

would follow, and that judgment for costs in some amount would be entered against N. M. Hart. No move was then made in the district court for retaxation of costs. We had entered an order that "the costs will be equally divided between appellants and appellees" (*Hart v. Delphey,* supra), which must be and is construed to apply to the costs in this court on appeal only. Both parties moved for retaxation of the costs on appeal, and also presented a showing as to the costs below, the Harts contending that nearly all of the costs in the court below and on the appeal should be taxed to the Delpheys, and the Delpheys claiming that nearly all, or at least three fourths, of the costs on appeal and also in the trial court, should be taxed to the Harts, and moving that such retaxation be made. Both motions were overruled. The matter then slumbered until 1920, when decree was entered in the N. M. Hart case in accordance with opinion in *Hart v. Delphey,* supra, and judgment for costs was entered against N. M. Hart on September 7, 1920, in the amount of $146.70, after which the Harts moved for a correction of the decree and retaxation of costs. The court, after a hearing, with the original files and records before him, refused retaxation,—on what particular ground we are not advised. We are now asked on this appeal to construe the order made in *Hart v. Delphey,* supra, that "the costs will be equally divided between appellants and appellees," as applying to the costs made in the court below, as well as on appeal, so that the costs may be taxed accordingly. We cannot adopt the construction urged by appellants. We are constrained to hold that such order, not mentioning the costs made in the court below, applied to the costs on appeal only. In the alternative, we are asked to find, from the record presented

to us, that about nine tenths of the costs made in the court below were incurred on the homestead and other issues in which the Delpheys were unsuccessful, and that the costs in the lower court should be taxed according to such theory. We think the case presented not one entitling appellants to the relief asked, and we so hold. While perhaps not controlling, but supporting our holding, see *Brett v. Clark*, 136 Iowa 544, wherein we said:

"While the Code specifies no time limit within which motions to retax may be filed, the party may be guilty of such laches or the situation may be such as to bar him of that relief."

Taxation of costs is peculiarly a matter in the discretion of the trial court, and, in the absence of clear abuse of discretion, will not be changed on appeal. We think there was no abuse of such discretion in the instant case. *Bush v. Yeoman,* 30 Iowa 479; *Boone County v. Wilson,* 41 Iowa 69; *Johnson v. Ruth,* 144 Iowa 693.

The order of the court below, overruling appellants' motion, is affirmed.—*Affirmed.*

STEVENS, C. J., EVANS and FAVILLE, JJ., concur.